Good afternoon, Your Honors. May it please the Court, my name is Marjorie Barrios and I represent plaintiffs' appellants John and Claudia Vandenburg in this matter. I would like to reserve two minutes for rebuttal, please. Your Honors, as this Court knows, this case centers on one fundamental question. Was it abuse of discretion for the lower court to deny plaintiffs' motion for leave to amend the complaint when the plaintiffs discovered that they were given the wrong affidavit long after the Rule 26 meeting, which established deadlines for amendment in trial? And although plaintiffs filed a motion to amend shortly after discovering they had been given the wrong affidavit, the lower court refused to consider that evidence. Well, wait a minute. You brought up a complaint that was against 20 does or a lot of does, right? Yes, Your Honor. And the county. Yes, Your Honor. Right. The motion to amend was about adding, primarily about adding the individual people. The first motion, yes, Your Honor. All right. Was that, what did this document have to do with it? The first motion to amend the affidavit mentioned, I'm sorry, Your Honor, so your question is about what did the correct affidavit have to do with our first motion to amend? Well, any motion to amend. There were two motions to amend. That's correct. But the first one was denied, so these individuals still weren't in. Correct. And, I mean, is there anything that matters other than getting the individual does names in? Well, we wanted to get the individual names in as well as add a judicial deception claim. Add what? Add a judicial deception claim. Okay. So the original complaint was based on the premise that there was no warrant. Then you discovered there was a warrant, which is why you wanted to add the deception claim. Correct, Your Honor. Okay. And to answer your question, Your Honor, about the need to add those, we were not given the operations packet at any time by defendants. And so when we did the first deposition of Deputy Bull, some names came up and that's when we wanted to add correct deputies. But Deputy Bull wasn't in the case either. There were no individuals in the case. Is that right? Correct, Your Honor. So what happened between motion to amend number one and motion to amend number two? It looks like about a six-week gap or something like that. That's correct, Your Honor. We did the second deposition of Deputy Bull and we were provided the correct affidavit. After we were provided the correct affidavit, we did the second deposition of Deputy Bull to question him on that affidavit. What do you mean by affidavit? What, are you talking about the search warrant affidavit or what? Yes, the affidavit of probable cause for the search warrant. Okay. All along we had the incorrect affidavit of probable cause until July 20th of 2015, and a month later we do a second deposition of Deputy Bull at which he clarifies to us. And what was the reason Judge Reel gave for denying your motion? He gave, as for the first one, he said that we were too late, that we were beyond the six months to add DOE defendant names, to add names of DOE defendants and to add the judicial exception. Where was the six months coming from? He said that we were beyond the Rule 26 meeting. At the Rule 26 meeting we established deadlines for amendment and trial. But the judge never entered that particular deadline as an order, at least the way I'm reading the docket. He entered on July 31st, he enters a trial date. He says on July 31st he sets a trial date, he sets a pretrial conference date, he sets a deadline for exchanging exhibit and witness list, and he says there's no motion cutoff date. I don't see anything in there about a deadline for amending the complaint. I know it was in your agreement in your 26F report or whatever, but was there an order where the judge said there's a deadline of X to amend the complaint? I don't believe so, Your Honor. He just said that it had been six months from the date that the complaint was filed and that it was too late and he found that there would be prejudice to the defendants. In terms of amendment, is there a way of drawing a distinction between whether you should have been allowed to amend to add Detective or Officer Bull and the other ones? Well, yes, Your Honor. And the reason I ask that question is that the motion to amend just kind of seems a little thin to me, a little thinner, let's say, on the other dozen or so people, and it's pretty detailed on Bull. Obviously you had more information on him because you'd taken his deposition. Yes, Your Honor. There was a reason to name the other ones because it was our belief that the other ones were involved in the service of the warrant. Deputy Bull is the one that drafted the affidavit of probable cause for the warrant, and then the gang task force is the one that served the warrant. And that's why we wanted to add the... When did you actually get the operations packet that you say was the reason for the delay? We never received that operations packet from defendants, Your Honor. All right. So that wasn't the reason for the delay. Correct. The reason for the delay was the wrong affidavit, which you got. When did you get the right one? Yes. I'm sorry, Your Honor. Let me backtrack. That was an additional reason for the delay because we were waiting... Well, how could there be a reason for explaining why you... I think the two motions were filed at the end of September and in November. Correct. You didn't get the operations package until December. No, we never received the operations packet, Your Honor. All right. So how was that a reason for the delay? Because we were waiting for it. We had made requests for production of documents, and we just simply never received it from the defendants. So then what was the mechanism by which you found out who the other does were who had helped execute the warrant then? From the witness lists provided by defendants, in which they prepared sort of like disclosures, and they said that these were their witnesses. Was it the 26-A-1 disclosures or something other than 26-A-1 disclosures? Yes. Okay. And when did you get those? Those were received on May 16th. So my understanding is that the defendants didn't argue delay and they didn't argue prejudice, they argued futility. That's the reason why you shouldn't be allowed to amend, is that right? I believe they also argued prejudice, Your Honor. They argued prejudice saying that it would be too late to add all these defendants for them to get ready for trial. Too late for these defendants to do what? If we added eight additional ones, that it would be too late in the case for the other defendants to be added so that they can prepare for trial. Too late for what reason? Was there any, because it's after 4 o'clock or something like that? What was the reason given? Because they were saying that there were already dates established by the lower court for trial. So they said that. In other words, too close to trial? Correct. All right. Of course, it may be hard to do it just real, but you could always ask for a continuous to the trial date, couldn't you? We did, Your Honor, and we actually submitted a stipulation at one point and that was denied. But didn't the trial date eventually get continued anyway for other reasons? No, Your Honor. It did not. Okay. Because of the summary, he granted summary judgment. Got it. Okay. It became a moot point. All right. So there was also a summary judgment motion which looks like it deals with the doles, but it can't be dealing with the doles, right? He found qualified immunity for doles, Your Honor. But even though there were no, the doles didn't exist. I mean, they were not named. Correct. And he, what about the summary judgment motion against the county? Do you contest that on the basis of the big, in that you would have to be able to demonstrate that there was some policy and have you? Yes, Your Honor. Well, it was our contention that there was a policy of inaction as to the procurement of warrants and the way that they went about the warrants and the way that they went about investigating this matter. There were several issues. One of the first ones was Deputy Boal at his deposition saying that no one reviewed his application for the warrant except for the district attorney. Secondly, Deputy Boal said that he didn't use Google Earth, even though it was a tool used in his department. And the other one is he was disciplined for eight hours for the, I believe that his statement was that he was disciplined for eight hours because of the mistake in the warrant. But there was nothing saying that he was disciplined because of the outright lies in the warrant themselves. Well, he was disciplined, wasn't he? But for the mistake in the warrant. That's what he said, that that was the phrase. Right. Well, if you want to reserve some time, you should. Yes, Your Honor, and I do have only one minute, less than one minute left. Thank you very much. Good afternoon, Your Honors. I'm Bruce Diesenhaus representing the County of Riverside. Let me just clear something up. It does appear to me that Judge Rehl thought he was granting summary judgment in favor of the Doe's, but he can't do that, right? Well. So all we have as to the summary. So we have two things before us, summary judgment as to the county. Correct. And the denial of leave to amend. Correct. Okay. Go ahead. As to the first, as to the county's summary judgment motion, the only allegations in the complaint were that the warrant for it was for the wrong house, which is not true. The warrant was for the correct location, albeit one that was not where the marijuana was growing. Due to the mistake. What does that mean? It was the wrong house. It wasn't the house in which the marijuana was growing. The warrant on its face listed the plaintiff's, the appellant's address. Right. The street address, right? Correct. It was based on the flyover that Deputy Boal performed where he unfortunately misidentified the location of where the marijuana was growing. It was growing right next door to the plaintiff's home. But didn't you say it was correct, the warrant was correct? The warrant is on its face. You just explained how it was mistaken. It was a mistake, but it was a reasonable mistake. But you said a second ago that the complaint was based on the warrant being issued for the wrong house. You were still dealing with the original complaint, right, because leave to amend had been denied. Correct. The original complaint said there wasn't a warrant because they didn't know at that point. They didn't know. I'm looking at the, when the original complaint was filed back in April, they knew there was a warrant? No, they alleged that there was no warrant for the home. Correct. And that was the complaint you were dealing with when you moved for summary judgment because Judge Reel had denied leave to amend. Actually, the complaint alleges in paragraph 24, which is two excerpts of record 22, that the police had no warrant to search the home. That's what I'm saying. Correct. Okay. And then on paragraph 27, plaintiff was later informed that the deputies had a search warrant for the home next door and had executed the warrant on the wrong address. Right. And then paragraph 28 says they've never seen it because the warrant, it says the warrant has never been produced and may not exist. So how can you, I mean, you started talking about how you were able to show that the warrant was issued for the wrong address, but if Judge Reel hadn't even allowed leave to amend, why was that even before him? It just seems odd to me. Well, the warrant had been ultimately produced in discovery long before the motion for summary judgment was filed. Okay. It's clear the complaint was wrong in its assertions. Right. But the, and the court was well aware because Deputy Bowles' testimony was before the court that he had flown over, that he had identified the plaintiff's home. Right. And that he had obtained a warrant for the plaintiff's address based on his, one, conversation with the border patrol agent, and two, the flyover. So did you argue that the motion to amend was untimely? Yes. Why was it untimely? Well, first, in the joint report. Well, first of all, you agreed to have it filed on September 4th, right? Correct. And it was actually filed a couple weeks later. True. And the judge had never issued any order about when it should be filed. Well. So you're basically saying because it was filed two and a half weeks later than we said it should be filed, it's untimely. Well, I think you have to go backwards. You have to start with the fact that in the joint report that was filed prior to the They indicated, plaintiffs did, that there was no intention to add additional parties, which, quite frankly to me, made no sense at the time and makes no sense to me now, especially in light of the allegations of the complaint where the second claim for relief. Well, the problem here is that Federal procedure doesn't allow for does, but they may have thought that since they alleged the does, there weren't any additional parties, they were just naming the does. And true. And the joint report also indicated they had no intention to do so. But when the court issued its scheduling order, based on that contention, it gave them until September 4th. No, the court did not give them until September 4th. My understanding is that there was a stipulation or agreement or it was in the joint status report, but it was not in the judge's order, September 4th. That's not my recollection. Where is the order then? I did not bring a copy. There's a docket entry date of July 31st. It's called Order Setting Pretrial and Trial Dates. It sets a trial date. It sets a pretrial conference date. It sets dates for exchanging exhibit and witnesses. And it says there's no motion cutoff date. True. Motions would include motions to amend the complaint. And the judge says right in the order, there's no motion cutoff date set. Also, some judges, as you know, separately set a date for amendment to pleadings, right? And Judge Reel didn't do that either, did he? He did not. All right. So what's the deadline? Presumably, Your Honor, it would have to have been well before December 14, 2015. Well, it was well before. It was late September. Because that's the discovery cutoff date. It was two and a half weeks after the agreed-upon date. There was an agreed-upon date. It was late, but not by much. True. It was two weeks late. And I think both the court's But not two weeks late according to the judge. Two weeks late according to what they had told you. Pursuant to the stipulation that the parties entered into. I think Judge Reel's analysis for the faux submersion was you never gave me any explanation of why it's taken you this long to want to do this, especially when the complaint is alleged the way it does. What does that mean? One of the grounds for moving to amend under Rule 15 is some diligence in providing the court with an explanation for the reason for delay in moving to amend. Didn't the plaintiff try to explain that in order to say, well, it's a defendant's fault. Could you never, for instance, give me the correct affidavit for the search warrant? I mean, you caused that delay, right? No, Your Honor. Isn't that a good cause? We did not. Well, who did? Well, you did.  You did. And that correct affidavit was supplied long before the second deposition of Deputy Bull, which took place on August 14th. No, not just long before, but it doesn't matter how long before. I'm talking about there was a delay from the time it should have been furnished to the time it was furnished. From the time... So you've got to give the plaintiff the benefit of that time period of delay, don't you? Even if you did, Your Honor, there was no discussion of it in the motion. The court indicated there was no basis to explain the delay. And the second motion basically reiterated the same allegations. Well, usually, you know, I think most judges, they require some kind of explanation if you want to take some action after the cutoff date. For instance, if you want to make a motion after the motion cutoff date, you've got to give some reason as to why you're late. But there was no deadline. So why should you have to explain why you're late when you're not late? Because of the proximity of the trial date and the proximity of... It wasn't particularly proximate, right? You're talking three, what, close to three months. True. How proximate was it? Three months. Three months is a lot. You know, after all, you know, it's really the same defense you're mounting, right, for the county anyway. What prejudice is there? What is the prejudice? The prejudice of having to defend eight or more new defendants. I know, but... And defendants whose names had been disclosed at the time of the initial discussion. But you knew their names, right? In fact, you're the one who gave their names to the plaintiff. Correct. Right. And you knew they were the participants in the raid.  Right. So you knew everything about them. It's one thing... What's the prejudice? It's one thing to know who they are. It's another to gather all of the evidence necessary to deal with the knowledge of each individual member for the purpose of filing a summary judgment motion. Because the basis for all of them could potentially be different. When was the complaint originally filed in this case? I'm sorry, Your Honor? When was the case, the complaint, first complaint filed? April 13, 2015. And we're talking about a trial by December? Yes. That's continuing a trial, what, 8 months after the case is filed is not particularly unusual. It was actually 10 months after. And I think the court, the case was originally set for trial on... It was set for trial on December... February 2nd. So it wasn't even, so therefore, this is late September and the trial is set in February, so it's more like 6 months before trial that they were trying to amend the complaint. After the scheduling order? Yeah, roughly. Okay. But at the scheduling conference, they set a discovery cutoff of December 14, and filing of memos of contentions of fact and law, exhibit lists, witness lists, and the pretrial conference order was due December 28. But none of that was in the judge's order. What's that? That was not in the judge's order. None of that was. The discovery cutoff date sure wasn't. Yes. But not the rest of it. Again, this is what the parties had stipulated to. I can't interpret what the judge didn't rule on, but presumably he had all of those in mind. He knew what those dates were. He knew they were relatively short dates, and so did plaintiff's counsel. Didn't the district judge rely primarily on futility and not on timeliness, at least as to the first order, the first motion? Yes. All right. Futility, and the futility was qualified immunity, which is essentially deciding the merits. An issue that's never been decided, they're not even in the case, and now you're going to decide that they have qualified immunity before anybody has done anything substantive in this case. And what happens then is you're switching the standard of review from the qualified immunity from de novo to abuse of discretion by deciding something that's never been decided in the case. That's an odd way to do futility. Usually futility is you've already alleged something, I've already ruled your changes are going to make a difference in my ruling, but he never ruled until this. Again, Your Honor. Is that an appropriate way to just deny a leave to amend under Rule 15 for futility as to something that's never been litigated in the case? It was his perception that that's what ultimately would happen. I presume as the case is a partnership court. But then he's deciding on the merits and it should be reviewed on the merits, not for abuse of discretion. Well, Your Honor, absent any evidence in front of him that any of the officers who actually executed that search warrant had any information that that was not the correct property or not the correct address, I don't think it's an understandable assumption to make. Well, the contention, for example, is they could have gone to the backyard and looked before they barged into this house. Actually, because of the way the property is set up, they couldn't. Because in order to do what the court just suggested, they would have had to expose under the circumstances. Because of the peculiar location of this home, there is no easy, simple way to access the back of the property to confirm the event. And there was enough evidence of that, as to that, before Judge Reel at the time he denied the leave to amend to know that? He would have, by looking at Deputy Bowles' testimony, not by looking at Sergeant Novak's testimony, because Sergeant Novak's deposition, even though, again, he was named in the initial disclosure, he was not deposed until December 4 of 2015. So the answer is potentially yes, but not as to Sergeant Novak. Okay. Your time's up. Thank you very much. Your Honor, just to go as to what Mr. Giesenhaus spoke about, the incorrectness of the affidavit, I'm sorry, of the warrant. The warrant, the first page, said that it was to be for a house with a large marijuana patch. That was not found, a large marijuana patch in the rear yard. And that was one of our main contentions, that there was a street in the back of the house that ran parallel to the backyard where the deputies, had they just established a perimeter, which it is common sense to infer that they would do that, to establish a perimeter. Didn't the sergeant say he made a tour of that area? Only at the front. As is customary, and I gather from his affidavit that he didn't have a clear view, did he? He didn't have a clear view because he didn't drive through the street that runs parallel to the backyard. I thought he went to that street. No, he did not. He just did the front yard. But supposedly there is no street. Is that a disputed fact? What fact do you have saying there is a street? Yes, Your Honor. Google Earth. Pictures from Google Earth show a nativity lane, and that is a disputed fact. Well, I don't see how we can dispute, well, I'm sure there's a way to dispute Google Earth, but Google Earth clearly shows a street nativity lane behind the plaintiff's home. And had they just driven by there, they would have seen that there's miniature horses instead of a large marijuana patch. All right. Your time is up. Thank you very much. The case of Vandenberg v. Riverside is submitted. We'll go on to Cameron v. Lord Brown and County of Los Angeles.
judges: Tashima, Berzon, Kennelly